## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

In re:

HOWARD AVENUE STATION,
LLC,

      Debtor.

_____/

HOWARD AVENUE STATION,
LLC, and
THOMAS ORTIZ,

      Appellants,

v.                                                    Case No.: 8:20-cv-2780-CEH[1]
                                          Bankruptcy Case No. 8:12-bk-08821-CPM

FRANK KANE,
THE DUBLINER, INC., and
RICHARD CAMPION,

      Appellees.

_____/

## OPINION

    Appellants Howard Avenue Station, LLC ("HAS") and Thomas Ortiz
("Ortiz") each appeal the bankruptcy court's Amended Final Judgment Resolving
Adversary Proceeding, entered on June 9, 2020 (Doc. 10-2).  The bankruptcy court
concluded that a finding of fact from a state court proceeding between the same parties
precluded a finding in Appellants' favor in the bankruptcy proceeding.  The
bankruptcy court, accordingly, resolved the adversary proceeding by entering

---

[1] Consolidated with Case No. 8:20-cv-02879-CEH pursuant to Dkt. 17.

summary judgment in favor of Appellees Frank Kane ("Kane"), The Dubliner, Inc. ("Dubliner"), and Richard Campion ("Campion") on the basis of collateral estoppel.

Appellants have filed their initial briefs (23, 48), Appellees have filed their response briefs (Docs. 30, 52), and Appellants have filed their replies (Docs. 54, 57).

Upon due consideration of the record, the parties' submissions, oral argument and otherwise being fully advised in the premises, the Court concludes that the Amended Final Judgment Resolving Adversary Proceeding should be reversed.

## I.    BACKGROUND

### A. The Parties and the Disputed Property

Appellee Frank Kane owns several adjoining properties in Tampa, including 2307 West Azeele Street ("2307 Azeele") and 309-317 South Howard Avenue ("the Howard Building"). Doc. 30 at 10. [2]  Since 2002, appellee The Dubliner, Inc. ("Dubliner"), a corporation whose principal is appellee Richard Campion, Doc. 10-17 ¶ 1, has leased the downstairs portion of 2307 Azeele from Kane in order to operate a bar called the Dubliner. Doc. 30 at 11; Doc. 37-8 at ¶¶ 6-7.  After two five-year terms governed by a written lease agreement, Dubliner's occupancy continued under an oral month-to-month agreement beginning in August 2012. Doc. 30 at 12-13.  The written lease ("the Dubliner Lease") described the premises as "the land and improvements located at 2307 W. Azeele St."  The lease referenced an attached sketch but did not provide a legal description.  Doc. 37-8 at ¶ 6.

---

[2] All page numbers in this Order refer to the page of the electronically-filed document rather than any internal pagination.

Appellant Howard Avenue Station, LLC ("HAS"), of which appellant Thomas Ortiz is the managing member, also rented property from Kane. Doc. 10-25 ¶ 1. Pursuant to a lease signed in 2009 ("the HAS lease"), HAS rented the upstairs portion of 2307 Azeele and the Howard Building. Doc. 23 at 7.[3] The lease defined the premises as "[c]ollectively, the upstairs portion of 2307 Azeele Street, Tampa, Florida 33609 and 309, 311, 313 and 317 South Howard Avenue, 33606." Doc. 10-26 at 2. The lease also stated: "Buildings and exterior space: see Composite Exhibit 'A' which includes a photograph of the fenced off area and storage unit in the rear of the Howard Avenue bldg. to be included as part of the [premises]." *Id.*; *see id.* at 11 (photograph).[4]

An outdoor space lies between 2307 Azeele and the Howard Building. The space formerly housed a courtyard or patio and a wooden wheelchair access ramp; Dubliner constructed a deck on this space and relocated the access ramp. Doc. 37-8 at 2. The outdoor space between the buildings has been split into thirds for the purpose of the property dispute between the parties. Doc. 23 at 9. It is undisputed that the eastern third, which adjoins 2307 Azeele, and the western third, which adjoins the

---

[3] HAS had initially signed a master lease for a much larger portion of Kane's property in 2006 ("the 2006 Master Lease"). *See* Doc. 37-8 ¶ 17; Doc. 10-108 at 14. As the master tenant Ortiz was responsible for collecting rent from Kane's other tenants, including the Dubliner. The 2006 Master Lease was voided in 2009 after HAS defaulted. Doc. 30 at 13. A Memorandum of Understanding ("MOU") between Kane and Ortiz provided that the Master Lease was terminated in all respects and that the MOU now constituted the entire agreement between the parties. Doc. 10-82 at 10-12. The MOU provided for the execution of a new lease for a smaller portion of the property: the 2009 HAS lease at issue in the bankruptcy proceeding. *Id.*

[4] The photograph depicts a fence that encloses a building and an adjacent space in which a vehicle is parked. Despite references to a "composite" exhibit and a "sketch," the parties agree that the photograph was the only item attached to the lease. Doc. 10-86 at 41.

Howard Building, were correctly controlled by the party that leased the adjoining building. *See id.* at 8-11. At issue is the middle third of the outdoor space ("the deck area").

## B. State Court Proceeding

Dubliner initiated an action in state court in May 2007 against Kane as well as HAS and Ortiz as the master tenant. Doc. 37-8. Dubliner sought a declaratory judgment that the Dubliner Lease, originally signed in 2002 and renewed in 2007, encompassed the deck area. *Id.* ¶¶ 19-21. Dubliner also sought injunctive relief to permit its continued use of the deck area. *Id.* ¶¶ 22-24. Dubliner alleged that it had constructed a deck and relocated the access ramp on the outdoor space with Kane's "full consent and approval and with his knowledge that both would be used by [Dubliner's] patrons." *Id.* ¶ 9. Yet, during negotiations related to the 2007 lease renewal, Kane informed Dubliner that its "'month-to-month lease for the deck/courtyard space' would terminate on May 31, 2007." *Id.* ¶¶ 12-15. Dubliner asserted that Kane intended to sell or transfer the deck area to HAS and Ortiz instead. *Id.* ¶ 17.

Kane, HAS, and Ortiz responded together and asserted counterclaims against Dubliner. Doc. 37-9. They alleged that Kane and Dubliner had entered into a separate, oral month-to-month lease for a portion of property—belonging to the Howard Building —on which Dubliner had built a deck. *Id.* ¶¶ C9-10.[5] Under the oral

---

[5] Paragraph numbers preceded by "C" refer to the enumerated paragraphs within the Counterclaims section of the Answer that begins on page 3.

lease, Dubliner agreed to pay Kane $700 per month for use of the deck area. *Id.* ¶ C12. Kane then provided written notice to Dubliner that its month-to-month tenancy was being terminated. *Id.* ¶ C13.  Dubliner failed to vacate the deck area, and Kane, Ortiz, and HAS sought to evict Dubliner from it.[6] *Id.* ¶¶ C7-15.

A bench trial took place in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, in front of Judge Ralph C. Stoddard. Doc. 30 at 29.  At the trial the parties presented evidence and put on lay and expert witnesses. *Id.* at 29-30.  In March 2008, prior to issuing a written judgment, Judge Stoddard announced his factual findings regarding the disputed deck area and his interpretation of the Dubliner Lease. Doc. 10-108;[7] *see id.* at 9 ("Let me continue to interpret the lease.").

Rejecting HAS's contention that public records showed the deck area indisputably belonged with the Howard Building, Judge Stoddard stated that he could not "know that for sure" without a survey. Doc.10-108 at 4.  Because the public records did not reference a street address or correspond with the property description in the Dubliner Lease, Judge Stoddard concluded that "2307" was merely a "mailing address." *Id.* at 3.  When HAS characterized the court as being "unsure" about the

---

[6] The state court action also asserted other claims against Dubliner for its alleged failure to pay its share of property taxes, insurance, and maintenance charges as well as a rent increase.

[7] The transcript of this proceeding is undated and incomplete.  The parties informed the bankruptcy court that no additional portions of the transcript were available. *See* Doc. 10-110 at 85.  Kane stated below that this proceeding occurred on or about March 10, 2008. Doc. 10-106 at 2.

location of the property line despite the public records, the following exchange took place:

> The court:   I am sure about that.  I am positive that 2307 encompasses the deck area.
>
> HAS:   But, judge, that's not correct
>
> The court:   Take it up with the 2nd DCA.  That's my finding of fact.

*Id.* at 4-5.

Judge Stoddard explained that, "if the contrary were true," Kane would be subject to a lawsuit based on fraud because he had led Dubliner to believe the space on which he built the deck was a part of the leased premises. *Id.* at 5.  Dubliner's belief was reasonable because the deck area was within the same fence and "communicated with the inside" of 2307 Azeele "by way of the wheelchair ramp." *Id.* at 3-4.  Judge Stoddard compared the situation to someone leasing their house and then telling the tenants, upon renewal, that the lease did not include the swimming pool. *Id.*

Counsel for HAS argued that the deck area had never belonged to Dubliner because it constituted the only access to the upstairs unit, which was not leased to Dubliner. *Id.* at 6.  Judge Stoddard stated, "The only issue is whether or not [the deck area] was a separate deal or was part of the written lease.  You're now trying to argue that it wasn't part of the deal at all.  That it actually belongs to the property next door." *Id.*

HAS reiterated that the legal description of 2307 does not include the deck, to which the court again highlighted the lack of a survey tying the street address to the

leased premises. *Id.* at 7.  HAS stated, "If your finding is that [the legal description is] 2307…that['s] fine." *Id.*   The court responded, "That's not my finding.  My finding is that when Mr. Campion leased the property, he leased the deck as well as the…enclosed premises." *Id.*; *see also id.* at 17 ("I ruled the courtyard was included in the main lease.").  Judge Stoddard rejected as incredible Kane's testimony that there was a separate oral agreement for the deck area. *Id.* at 8.

Counsel for Dubliner also noted during this proceeding that it intended to continue to occupy the property during the remaining term of the lease, which continued through August 15, 2012. *Id.* at 13.

Summarizing his factual findings, Judge Stoddard stated

> Based on the evidence, I find the following in reference to the declaratory judgment.  And the three questions I was asked to answer, whether the lease agreement encompasses the courtyard deck area, including the handicapped access ramp: yes.

*Id.* at 22.  Judge Stoddard further found that Dubliner had effectively renewed its lease through 2012, such that Kane, HAS, and Ortiz were precluded from terminating Dubliner's lease rights, including its right to the deck area. *Id.*

The state court issued a Partial Final Judgment on July 2, 2008. Doc. 37-11. Included among its findings was the following: "The written lease agreement includes the courtyard/deck area on the east side of the building, including the handicap access ramp." *Id.* ¶ 3.   The court incorporated the Partial Final Judgment into a Final Judgment issued on May 24, 2009. Doc. 37-12.

### C. Adversary Proceeding

In October 2012, HAS, as a Chapter 11 Debtor, initiated a proceeding in bankruptcy court against Dubliner and Campion demanding turnover of the deck area ("the Adversary Proceeding"). Doc. 23 at 7; Doc. 10-7.  HAS asserted that the HAS Lease entitled it to possession of the deck area once the Dubliner Lease expired on August 15, 2012. *Id.* at ¶¶ 9, 11.  Kane intervened and filed a counterclaim against HAS and Ortiz alleging tortious interference with a business relationship and seeking a declaratory judgment establishing that the HAS Lease does not provide any rights of occupancy or possession to the deck area. Doc. 30 at 9; Doc. 10-14.  The parties moved for summary judgment, and the bankruptcy court issued an oral order denying both motions and scheduling a final evidentiary hearing. Doc. 30 at 15; Doc. 10-11; Doc. 10-18; Doc. 10-105 at 5.

Before the final evidentiary hearing could occur, Kane filed a renewed motion for summary judgment on a different ground. Doc. 10-106.  Under principles of collateral estoppel, he argued, Judge Stoddard's ruling in state court precluded the bankruptcy court from finding that the HAS Lease included the deck area. *Id.* at 6-7. Highlighting the portion of the state court proceeding in which the court stated "I am positive that 2307 encompasses the deck area … That's my finding of fact," Kane argued that Judge Stoddard determined that the deck area belonged to 2307 Azeele, and therefore not to the Howard Building. *Id.* at 6, 21.[8]

---

[8] Kane explained that he had only recently obtained the transcript of the state court proceeding. Doc. 10-106.

HAS filed a response in opposition in which it argued that the state court's quotation was taken out of context and its ruling concerned only the terms of the Dubliner Lease, which expired on August 15, 2012. Doc. 10-107; Doc. 10-110 at 59-61. None of the parties disputed that the *Dubliner* Lease had included the back deck. *Id.* at 58. But because Judge Stoddard did not rule on the question at issue in the Adversary Proceeding—did Kane subsequently lease the deck area to HAS—collateral estoppel could not apply. *Id.* at 3-6. In reply, Kane asserted that Judge Stoddard made a specific finding of fact that the deck area was part of the physical address of 2307 Azeele, and that he rejected HAS's current argument that the legal description controls the question of which property owns the deck area. Doc. 10-109 at 4-6.

At an oral argument on June 20, 2014, the bankruptcy court highlighted Judge Stoddard's analogy that "the pool goes with the property," which it considered evidence that his finding of fact that "2307 encompasses the deck area" was broader than a mere interpretation of the lease. Doc. 10-110 at 59-65. [9] The court also emphasized that HAS had not appealed Judge Stoddard's ruling. *Id.* at 59-60, 67.

---

[9] *See* Doc. 10-110 at 63, 67, 75:

| | |
|---|---|
| The Court: | He says 2307 encompasses the deck area. He then links it with the swimming pool analogy. |
| Mr. Hightower: | He cannot make that decision— |
| The Court: | He did it. |
| Mr. Hightower: | He can't rewrite property boundaries |
| The Court: | He did it. He did it. |
| … | |
| Mr. Hightower: | But he cannot make that change. He can't *sua sponte* change the boundary lines. |
| The Court: | He did. He did. |
| … | |

The bankruptcy court granted Kane's renewed motion for summary judgment.

*See* Doc. 10-121 at 1; Doc. 10-118.  Announcing its ruling in detail, the court explained:

> So in this case, was the issue of whether the address of 2307 Azeele Street includes the deck area squarely before Judge Stoddard?  And it was.  And it is not dependent on a time frame, it's not dependent on one lease versus the other lease.
> …
> [B]ecause of Judge Stoddard's ruling, I cannot find that the deck area could be anything other than what he ruled: Part of that 2307 Azeele address.  And since the lease describes the leased premises as including 2307 Azeele Street, both with respect to The Dubliner lease and with respect to the later HAS lease, it clearly must include, meaning the 2307 street address, must include the deck area.
> …
> The pleadings in the case below and Judge Stoddard's oral ruling…leave no doubt in my mind that Judge Stoddard unequivocally ruled that the address of 2307 Azeele Street includes the deck area and would so for all time.
> So he did, in effect, establish the boundaries of that address for purposes of Frank Kane's dealing with that property, that 2307 property, in connection with anyone who participated in that litigation or anyone in the future who finds out about that litigation prior to entering into a lease with Frank Kane.
> Whether a description of the deck area by parcel ID or survey or other means would yield the same result was not before Judge Stoddard and it's not before me now, but I must accept Judge Stoddard's ruling.
> …
> When Mr. Kane and Mr. Ortiz subsequently entered into the HAS lease…they were fully aware that the previous judicial determination that the address of 2307 Azeele Street included the deck area.  Consequently, had anyone that is a party to the HAS lease…intended to include the deck area, they would have easily expressly included it within the description of the demised premises.
> …

---

| The Court: | All I'm saying is, the pool sticks with the house.  …  No matter what the boundary line is. |

> [The allegations in the state court complaint] show how critical and necessary it was to Judge Stoddard's ruling that someone construe what 2307 West Azeele Street meant.  Because it meant that [if] the east courtyard were included, there would be no reason to discuss an oral lease, which was the alternative.

Doc. 10-118 at 12-18.

The court issued a Final Judgment on Count I of Complaint for Turnover of Property in which it held that "collateral estoppel precludes relitigation of Judge Ralph Stoddard's determination that the 'back deck' is not included in the HAS lease. Accordingly, [HAS] has no right to possession, occupancy or title…to the deck area." Doc. 10-121 at 2.  The court adopted and incorporated the Final Judgment into an Amended Final Judgment Resolving Adversary Proceeding, issued on October 6, 2020. Doc. 10-2.  The Amended Final Judgment also issued judgment in favor of Kane regarding both counterclaims. *Id.* at 3.

### D. Current Appeal

HAS and Ortiz filed separate appeals of the Amended Final Judgment Resolving Adversary Proceeding challenging the bankruptcy court's finding of collateral estoppel.  The appeals were subsequently consolidated. Doc. 17.

HAS argues that the state court proceeding cannot be a basis for collateral estoppel for three reasons.  First, a judgment cannot serve as a basis for collateral estoppel where, as here, significant and material events at issue in the new proceeding—the execution of the HAS Lease—occurred after its entry. Doc. 23 at 20-24.  Further, the issues between the two proceedings are not identical because each proceeding concerned the question of whether the deck area was included in a different

lease. *Id.* at 24-28.  Finally, HAS argues that manifest injustice would result from an application of collateral estoppel. *Id.* at 28-30.

In response, Kane argues that the issues are identical because the state court specifically rejected the arguments about property boundaries that HAS raised in both proceedings, determining that the deck area was not encompassed in the Howard Building's address. Doc. 30 at 25.  The critical and necessary finding of fact for the bankruptcy court's determination was that the address of 2307 Azeele included the deck area, not that of the Howard Building. *Id.* at 31.  Moreover, HAS and Ortiz had a full opportunity to litigate the issue in state court, even putting on an expert witness at the bench trial, and forfeited their right to appeal the result. *Id.* at 28-30.  Kane also makes several factual arguments that the HAS Lease was not intended to include the deck area, including the fact that Ortiz was fully aware of the state court's ruling at the time he entered into the HAS Lease. *Id.* at 20-22, 32-36.  Finally, Kane argues that HAS failed to preserve their claim that manifest injustice precludes the application of collateral estoppel. *Id.* at 37.[10]

Replying to Kane's brief, HAS argues that the only issue in state court was the scope of the Dubliner Lease, which was not at issue in the bankruptcy proceeding. Doc. 54 at 4-5.  The issue of the parties' respective rights upon expiration of the written Dubliner Lease was not litigated in state court, and could not have been since the HAS Lease did not exist yet. *Id.* at 9-10.  Issue preclusion cannot be applied where the timing

---

[10] Dubliner and Campion join both of Kane's response briefs. Docs. 31, 53.

and nature of the leases at issue in the two proceedings is fundamentally different. *Id.* Moreover, Kane's arguments rest on the mistaken premise that the interpretation of the lease is an either/or question because Kane could not have leased the same premises to two parties at once—but he could have and did. *Id.* at 4, 6. Lastly, ambiguities in the record and unresolved questions of fact precluded summary judgment. *Id.* at 6-7.

Ortiz filed a supplemental brief in addition to joining in HAS's brief. Docs. 42, 48. He argues that the bankruptcy court misinterpreted the state court decision, which only found that the Dubliner Lease included the deck area rather than the property itself. Doc. 48 at 7-8, 12-15, 17-18. As a result, the issues in the two proceedings were not identical. *Id.* at 21-23, 26-28. The bankruptcy court's interpretation had the effect of changing property boundaries, because it is "undisputed" that the deck area was part of the Howard Building's property. *Id.* at 6, 9-10, 12. Even if changing property boundaries is what the state court intended, doing so would have been legally improper and outside the merits of the state court proceeding, which cannot be a basis for collateral estoppel. *Id.* at 23-29.

Kane argues, in response, that Ortiz has waived his arguments regarding the change in property boundaries because he did not file a statement of issues on appeal and those arguments are not inferable from HAS's Statement of Issues. Doc. 52 at 9-11. Responding to the merits, Kane contends that the possession of the deck area between the Azeele and Howard properties was directly in front of Judge Stoddard in

13

the state court proceeding. *Id.* at 11-12.  Both Appellants are now bound by his ruling because of their failure to appeal. *Id.* at 12.

In reply, Ortiz asserts that he has not waived any issues because he was not required to file a statement of issues, and, in any event, his arguments are covered by or inferable from the issues identified by HAS. Doc. 57 at 7-17.  Ortiz reiterates that Judge Stoddard's ruling related only to the Dubliner Lease, which means that his failure to appeal is irrelevant. *Id.* at 21.  The alleged finding of fact that Kane and the bankruptcy court rely on is an oral pronouncement that has no bearing on collateral estoppel because it was not included in the written judgment. *Id.* at 19.  Finally, Ortiz makes factual arguments that Kane's subsequent actions make clear the property line has not changed. *Id.* at 20.

At oral argument on September 6, 2022, Kane asserted that collateral estoppel applied because the state court proceeding permanently resolved the question of which building controls the deck area with respect to these parties.  The HAS Lease signed in 2009 was simply a continuation of the agreement that had been in place at the time of the state court case—the 2006 Master Lease, between the same parties and regarding the same properties—which is what prompted the state court litigation in the first place.  According to counsel for Dubliner and Campion, who litigated the state court case, the subject of the bench trial in state court had been whether HAS controlled the deck area because of its control of the Howard Building or whether the deck area was included in the Dubliner Lease.  Ortiz, who had also been present during the state court litigation, disagreed with these characterizations.  He contended that the state

14

court proceeding was not about the 2006 Master Lease at all, but rather whether the written Dubliner Lease had included the deck area or whether the deck area had been the subject of a separate oral agreement.

## II.     STANDARD OF REVIEW

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts. 28 U.S.C. § 158(a). The Court functions as an appellate court in reviewing decisions of the bankruptcy court. *See In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994). The district court reviews legal conclusions of the bankruptcy court de novo and reviews the bankruptcy court's findings of fact for clear error. *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009). Thus, in reviewing the bankruptcy court's factual findings, the district court must accept the factual findings unless they are clearly erroneous. *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993). Mixed questions of law and fact are reviewed de novo. *In re Cox*, 493 F.3d 1336, 1340 n.9 (11th Cir. 2007).

## III.     ANALYSIS

### A. Ortiz's Appeal Arguments Have Not Been Waived.

It is first necessary to address Kane's threshold contention regarding the purported waiver of some of Ortiz's appeal arguments. Kane asserts that Ortiz has waived two of his arguments because he did not file a statement of the issues pursuant to Fed. R. Bankr. P. 8009(a)(1)(A). Doc. 52 at 9-11. Kane further contends that Ortiz's arguments regarding the propriety of changing property boundaries are unpreserved

because they do not fall within HAS's Statement of the Issues. *Id.* at 10-11; *see* Doc. 10-4.

Fed. R. Bankr. P. 8009(a)(1)(A) requires an appellant to file the record on appeal and a statement of the issues to be presented within 14 days of the notice of appeal. "An issue that is not listed [in the statement of issues] and is not inferable from the issues that are listed is deemed waived and will not be considered on appeal." *In re Freeman*, 956 F.2d 252, 255 (11th Cir. 1992).

The Court finds that Ortiz has not waived any of his appeal arguments under Rule 8009.  This is a consolidated appeal in which both appellants are challenging the same order for substantially similar reasons.  HAS filed the record on appeal and statement of the issues pursuant to Rule 8009(a)(1)(A).  The Court then permitted Ortiz to *supplement* the record on appeal pursuant to 8009(e)(2)(B). Doc. 32 at 2. Supplementation of the record does not require the filing of a statement of the issues. Moreover, it was reasonable for Ortiz to rely on the Statement of the Issues filed by HAS under these circumstances.

In any event, Ortiz has not waived his appeal arguments because they are reasonably inferable from the issues listed in HAS's Statement of the Issues.  Courts have found that explicitly stating an argument in a statement of issues is not necessary to a finding of inferability. *In re FFS Data, Inc.*, 776 F.3d 1299, 1306 n. 7 (11th Cir. 2015) (no Rule 8006 waiver where "the substance of the issue [wa]s clearly inferable from…arguments below" even though party did not use the term "res judicata"

below). [11]   Further, it is appropriate for parties to "narrow[] and refine[]" their arguments in their briefs from the broad contentions in the statement of the issues.  *In re Davis*, No. 8:10-cv-2216-T-33, 2011 WL 997270, *2 (M.D. Fla. March 18, 2011) (Covington, J.); *see also In re Bull*, 528 B.R. 473, 485–86 (M.D. Fla. 2015) ("The fact that the briefed issues are more detailed, pinpointing the specific aspects of the Bankruptcy Court's Order which PaeTec contends were erroneous as to the two issues decided, does not mean that the issues cannot be 'inferred' from the initial Statement of the Issues.").

Here, the first issue listed in the Statement of Issues is:

> 1.  Whether the bankruptcy court erred in ruling … that collateral estoppel precludes litigation of the issue of whether [the deck area is] included in the [HAS Lease].

Doc. 10-4 at 1. [12]

Ortiz argues that the court erred in applying collateral estoppel by construing Judge Stoddard's judgment as having changed the boundary between" the properties, which would have been "legally improper" and "was outside of the merits of the state court case as pled." Doc. 48 at 2.

These arguments are reasonably inferable from the statement of the issues because they merely provide narrower and more refined grounds for finding that

---

[11] Fed. R. Bankr. P. 8006 was the predecessor to Rule 8009 before the form of the Federal Rules of Bankruptcy Procedure was changed effective December 1, 2014.

[12] The Court notes that Kane's opposition brief, although purportedly quoting from the Statement of Issues filed by HAS, lists a rephrased issue that is substantively different from the issue listed in HAS's filing. *See* Doc. 52 at 10; *see also infra* at n.13.

collateral estoppel was not available, the larger argument that both appellants are making. *See In re Davis*, 2011 WL 997270 at *2. Both Ortiz and HAS rely on a series of narrow arguments regarding the error in the bankruptcy court's finding of collateral estoppel, none of which are explicitly listed in the Statement of Issues but all of which are reasonably inferable. The Court finds that neither of them has waived their arguments. Accordingly, it will consider the merits of Ortiz's appeal arguments alongside those of HAS.

## B. The State Court Ruling Does Not Collaterally Estop the Current Litigation.

"Under collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties." *Montana v. United States,* 440 U.S. 147, 153 (1979). Federal courts may apply collateral estoppel to issues decided by state courts. *Kremer v. Chem. Const. Corp.,* 456 U.S. 461, 467 n. 6 (1982). In considering whether a state court judgment collaterally estops a federal court, the federal court applies the rendering state's law of preclusion. *Cmty. State Bank v. Strong,* 651 F.3d 1241, 1263 (11th Cir.2011). The parties agree that Florida law on collateral estoppel applies to the instant appeal. Doc. 23 at 19; Doc. 30 at 24.

Contrary to Kane's attempt to reframe the issues in the instant appeal,[13] the question of whether collateral estoppel is available is a legal question that is reviewed

---

[13] *Cf. Doc. 52 at 10 (while ostensibly quoting from Appellant's Statement of the Issues, modifying each issue to reflect an abuse of discretion standard); Doc. 30 (same, and arguing that district court's finding of collateral estoppel was not an abuse of discretion); *see* *McWhorter*, 887 F.2d at 1566 ("The actual decision whether to apply collateral estoppel

*de novo. Matter of McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1989); *In re Kapila*, 762 F. App'x 991, 994 (11th Cir. 2019); *see also Winn Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008 (2014) ("We review *de novo* whether Florida law allowed the district court to give preclusive effect to the state court judgment.").

The party who seeks to apply collateral estoppel bears the burden "of demonstrating with sufficient certainty through the record or extrinsic evidence" that collateral estoppel is available. *Meyers v. Shore Industries, Inc.*, 597 So.2d 345, 346 (Fla. 2d DCA 1992); *Sun State Roofing Co., Inc. v. Cotton States Mut. Ins. Co.*, 400 So.2d 842, 844 (Fla. 2d DCA 1981).  When a party moves for summary judgment on collateral estoppel grounds, Florida courts require him to "conclusively prov[e]" that an identical issue was clearly determined. *Krug v. Meros*, 468 So.2d 299, 302 (Fla. 2d DCA 1985); *Allstate Ins. Co. v. A.D.H., Inc.*, 397 So.2d 928, 930 (Fla. 3d DCA 1981).  As with all motions for summary judgment, the movant must "demonstrate conclusively that the opposing party cannot prevail," which precludes "even the slightest doubt that an issue [of material fact] might exist." *Sun State Roofing Co.*, 400 So.2d at 843; *see also In re Harris*, 3 F.4th 1339, 1346 (11th Cir. 2021) (approvingly citing out-of-circuit holding that "any reasonable doubt as to what was decided by a prior judgment…should be resolved against using it as an estoppel.").

---

undoubtedly involves equitable considerations…and is therefore subject to review under an abuse of discretion standard.…The initial question of whether collateral estoppel is available, however, is a legal question which this court must consider de novo.") (citations omitted).

### 1. *Elements of Collateral Estoppel*

In Florida, collateral estoppel applies under the following circumstances:

> (1) an identical issue must have been presented in the prior proceedings; (2) the issue must have been a critical and necessary part of the prior determination; (3) there must have been a full and fair opportunity to litigate that issue; (4) the parties in the two proceedings must be identical;[14] and (5) the issues must have been actually litigated.

*Diagnostic Leasing, Inc. v. Associated Indem. Corp.*, 8:16-CV-958-T-36TGW, 2019 WL 13192055, *13 (M.D. Fla. Jan. 25, 2019) (Honeywell, J.) (collecting cases); *see also Winn–Dixie Stores, Inc. v. Dolgencorp, LLC,* 746 F.3d 1008, 1036 (11th Cir. 2014) (listing the elements as: (1) an identical issue (2) has been fully litigated (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction).

The "essential elements" of the collateral estoppel analysis under Florida law are whether "the parties and issues [are] identical, and [] the particular matter [was] fully litigated and determined in a contest which result[ed] in a final decision of a court

---

[14] In Florida, unlike in the federal courts, the doctrine of collateral estoppel requires identity of the parties. "[U]nless both parties are bound by the prior judgment, neither can use the judgment as an estoppel against the other in a subsequent action." *Starr Tyme, Inc. v. Cohen*, 659 So. 2d 1064, 1067 (Fla. 1995), citing *Stogniew v. McQueen,* 656 So.2d 917 (Fla.1995). Here, while all of the parties in the instant appeal were also parties in the state court litigation, the appellants and Kane were not adverse to each other in the state court proceeding. HAS challenged collateral estoppel on this basis below. Doc. 10-117 at 5; Doc. 10-118 at 9-12. On appeal, however, the appellants do not assert that identity of the parties is lacking for that reason. Rather, HAS briefly states in a footnote that "[a] question is also present" as to identity of the parties because HAS is now a debtor-in-possession, while it was not yet a debtor in the state court proceeding. Doc. 23 at 20 n.3. HAS does not provide any authority for this contention, which was not raised below, and the Court does not find it persuasive.

of competent jurisdiction." *In re Harris*, 3 F.4th 1339, 1345–46 (11th Cir. 2021), citing *Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.*, 945 So.2d 1216, 1235 (Fla. 2006).

In the instant appeal, the primary points of contention are whether the issue in the adversary proceeding is identical to the issue litigated in state court, whether it was actually litigated in state court, and whether it was critical and necessary to the state court determination. These three elements are fundamentally intertwined.

The issues in the two proceedings will be considered identical for the purpose of collateral estoppel where they turn on the same legal question. The fact that two proceedings concern the exact same *subject* does not mean they involve the same legal question. In *Fernandez v. Cruz*, 341 So.3d 410, 416 (Fla. 3d DCA 2022), the court held that collateral estoppel did not apply even though the prior and current suit involved the same transaction and documents, because their "factual underpinnings" differed. The current claim was therefore not "presented by way of pleading or litigated, let alone adjudicated, in the original action." *Id.*; *see also Ervin v. Smith*, 312 So.3d 995, 999 (Fla. 1st DCA 2021) (collateral estoppel was not available where both proceedings were about fees awarded in different provisions of the same settlement agreement, because the issue in the current action was neither critical and necessary to nor actually adjudicated in the prior action); *Sunseeker Invs., Inc. v. Enter. Maint. & Contracting, Inc.*, 305 So.3d 829, 830 (Fla. 1st DCA 2020) (collateral estoppel did not apply where both proceedings involved the same set of loan payments but different legal questions about them).

On the other hand, the issues in two proceedings may be "identical" for collateral estoppel purposes even where they are not entirely indistinguishable.  The Eleventh Circuit has explained that factors identified in the Restatement (2d) of Judgments are relevant in such a circumstance. *Winn–Dixie Stores, Inc. v. Dolgencorp, LLC,* 746 F.3d 1008, 1036-37 (11th Cir. 2014), citing to *Cook v. State*, 921 So.2d 631 (Fla. 2d DCA 2005).  The Restatement factors include:

1) Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?
2) Does the new evidence or argument involve application of the same rule of law as that involved in the prior proceeding?
3) Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?
4) Is the question to be answered the legal effect of a document identical in all relevant respects to another document whose effect was previously adjudicated? and
5) If the events in the suits took place at different times, is the overlap so substantial that preclusion is plainly appropriate?

*See* Restatement (2d) Judgments § 27 cmt.c (paraphrased).  Applying these principles in *Winn-Dixie*, 746 F.3d 1008, the Eleventh Circuit concluded that a prior state court decision regarding a lease did not preclude the federal court from interpreting similar leases signed between the same parties. *Id.* at 1036-37.  The lease in the prior case had been created in 1985 for a single store, while the current case involved leases for dozens of stores signed across three decades throughout four states. *Id.* at 1037.  The court held that the "differences in the time, location, and terms of the lease," which made pretrial preparation and discovery necessarily broader than that

required for the state court case, meant that identity of the issues was lacking and collateral estoppel could not apply. *Id.*

HAS's assertion that "collateral estoppel cannot be applied based on subsequent events," Doc. 23 at 22, is not entirely accurate. Rather, collateral estoppel "does not apply where unanticipated subsequent events create a new legal situation." *Newberry Square Fla. Laundromat, LLC v. Jim's Coin Laundry and Dry Cleaners, Inc.*, 296 So.3d 584, 591 (Fla. 1st DCA 2020), citing *Krug v. Meros*, 468 So.2d 299, 303 (Fla. 2d DCA 1985). The Eleventh Circuit has similarly held that identity of the issues will not exist under federal law if there have been "changes in facts essential to a judgment," such that a party can "point to one material differentiating fact that would alter the legal inquiry." *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003) (citations omitted). But the fact that an event at issue in the current case occurred after the prior litigation will not defeat identity of the issues if it does not alter the legal inquiry. In *Pumphrey v. Dep't of Children and Families*, 292 So.3d 1264, 1266 (Fla. 1st DCA 2020), for example, the prior case involved a previous Medicaid application, while the current case involved a new Medicaid application. Because the new application was not supported by new facts, changed conditions, or additional submissions, however, the issue of the appellant's eligibility for Medicaid was barred by collateral estoppel. *Id.*; *cf. Ward v. State*, 111 So.3d 225, 228 (Fla. 2d DCA 2013) (a civil commitment proceeding in 1976 could not preclude a civil commitment proceeding in 2011 because each involved the question of the petitioner's *current* mental state).

Likewise, the Eleventh Circuit applied issue preclusion in *Collier Cnty. v. Holiday CVS, LLC*, 722 F. App'x 915 (11th Cir. 2018), even though the subject of the current proceeding occurred after the prior case. In the prior proceeding, the jury had awarded damages to the plaintiff based on its claim that it would be forced to close its business on a specific date more than a year in the future. *Id.* at 917. When the business remained open past that date, the prior defendant filed a new suit arguing unjust enrichment. *Id.* The prior defendant argued that collateral estoppel could not apply because "the unjust windfall…did not even begin to occur until over one year after the conclusion of the trial and the jury's verdict." *Id.* at 919. Rejecting this argument, the Court emphasized that the issue had been before the jury because the defendant had specifically told them to consider the possibility that the plaintiff's business would not close and that an unjust windfall would result. *Id.*

The element of identity of the issues overlaps significantly with the requirement that the issue was "actually litigated" in the prior proceeding. For example, where the same legal question was not presented in the prior case, it could not have been "actually litigated." *See Ervin*, 312 So.3d 995; *Fernandez*, 341 So.3d at 416, *supra*. On the other hand, an issue will be found to have been "actually litigated" in a prior proceeding if the same legal question was squarely before the factfinder. *See Provident Life and Accident Ins. Co. v. Genovese*, 138 So.3d 474, 478-79 (Fla. 4th DCA 2014) (issue was critical and necessary and actually litigated where it was the subject of the parties' pretrial motions, the charge conference, closing arguments, a special interrogatory verdict to the jury, and post-trial motions; the fact that the issue was not included in

the final judgment was the fault of the party who failed to request it); *see also Collier Cnty.*, 722 F. App'x at 919, *supra*.

However, collateral estoppel may not be available even where the very same legal question was disputed by the parties in the prior proceeding, because it may not be considered "actually litigated."  Quoting the Restatement (2d) of Judgments, the Third District Court of Appeals has explained:

> When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of [collateral estoppel].

*Fernandez v. Cruz*, 341 So.3d 410, 415 (Fla. 3d DCA 2022), quoting Restatement (2d) of Judgments § 27 cmt.d.  It follows that if the issue was *not* properly raised in the prior proceeding, it cannot be the basis of collateral estoppel.  For example, the court in *Lucky Nation, LLC v. Al-Maghazchi*, 186 So.3d 12, 15 (Fla. 4th DCA 2016), held that an issue was not "actually litigated" because the plaintiff had not filed a proper pleading that lawfully invoked the court's subject-matter jurisdiction for the issue the court purported to decide.

Similarly, a determination that is not "essential to the ultimate decision" in the prior proceeding cannot be the basis for collateral estoppel because it does not satisfy the "critical and necessary" element.[15] *See Diagnostic Leasing, Inc. v. Associated Indem.*

---

[15] Many, though not all, Florida courts have applied a "critical and necessary" element to the collateral estoppel analysis. *See*, *e.g., Marquardt v. State*, 156 So.3d 464, 481 (Fla. 2015); *Republic of Ecuador v. Dassum*, --- So.3d ---, 2022 WL 3050247 (Fla. 3d DCA Aug. 3, 2022); *Fernandez v. Cruz*, 341 So.3d 410 (Fla. 3d DCA June 1, 2022); *but see In re Harris*, 3 F.4th 1339, 1346 n.3 (11th Cir. 2021) (while not reaching the issue, describing the conclusion of *amicus*

*Corp.*, 8:16-CV-958-CEH-TGW, 2019 WL 13192055, *13 (M.D. Fla. Jan. 25, 2019) (Honeywell, J.), citing *Provident Life and Accident Ins. Co. v. Genovese*, 138 So.3d 474, 478-79 (Fla. 4th DCA 2014).  The Restatement (2d) of Judgments again provides an explanation:

> *h. Determinations not essential to the judgment.* If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made. In these circumstances, the interest in providing an opportunity for a considered determination, which if adverse may be the subject of an appeal, outweighs the interest in avoiding the burden of relitigation.

Restatement (Second) of Judgments § 27, cmt.h (1982).

In *Goodman v. Aldrich & Ramsey Enterprises, Inc.*, 804 So. 2d 544 (Fla. 2d DCA 2002), the court held that collateral estoppel did not bar an issue that the parties had disputed in a prior foreclosure action.   The prior proceeding had involved the presentation of evidence regarding the party's other suspicious transactions—which were the subject of the new proceeding—to demonstrate that the transaction at issue was fraudulent. *Id.* at 546.  Although the prior court "made findings regarding those ancillary transactions," the Second District Court of Appeal held that "those findings were not critical and necessary to the foreclosure action" because "the resolution of those ancillary issues was not before the foreclosure court and of only tangential

---

that Florida law does not include a "critical and necessary" element for collateral estoppel despite its numerous references in the caselaw).

relevance to its [foreclosure] decision." *Id.* at 547; *see also CSX Transp.*, 327 F.3d at 1318 (when applying federal law, "declin[ing] to give the broad holding [of the prior case] preclusive effect because to do so would give dicta preclusive effect.").

### 1.  *Application to the Instant Appeal*

Here, the Court finds that the elements of collateral estoppel are not satisfied. Although it is a close question because of the substantial overlap between the issues litigated, the specific issue in the adversary proceeding was not identical to, actually litigated in, or critical and necessary to the state court proceeding.  Collateral estoppel is therefore not available.

An evaluation of identity of the issues between the two actions turns on their framing.  Appellees argue that the issue in both cases was which property the deck area belongs to, 2307 Azeele or the Howard Building.  According to Appellees, because Judge Stoddard determined that the deck area would always—at least with respect to these parties—follow the Azeele property, HAS's current claim that it is entitled to the deck area is precluded.  In contrast, Appellants argue for a much narrower definition of the issue in each case.  The prior case concerned whether the Dubliner lease included the deck area, while the current case asks whether the HAS lease—which did not exist at the time of the prior case—gives it priority to the deck area now that the Dubliner lease has expired.

Both cases, of course, concern the same subject: the deck area and the same parties' entitlement to it.  Accordingly, much of the evidence and trial preparation involved in the two proceedings will be the same. *See* Restatement (2d) Judgments §

27 cmt.c.  And the legal questions raised in both cases are indeed *similar*.  But because the Court finds that they are not identical, collateral estoppel cannot apply.  *See Ervin*, 312 So.3d 995; *Fernandez*, 341 So.3d at 416; *Ward v. State,* 111 So.3d 225, 228 (Fla. 2d DCA 2013).

The only issue that was properly before Judge Stoddard was whether the written Dubliner Lease included the deck area or whether the deck area had been conveyed via a separate oral agreement.  *See* Doc. 37-8 ¶ 21 (Complaint describing the dispute between the parties as "whether the Lease Agreement encompasses the courtyard/deck area" and whether Dubliner effectively renewed the lease); Doc. 37-9 ¶¶ C7-25 (Counterclaims for eviction and breach of oral lease for the deck area).  In contrast, the current proceeding turns on the parties' intent when signing the 2009 HAS Lease with respect to the anticipated expiration of the Dubliner lease.  The signing of the 2009 HAS Lease and the expiration of the written Dubliner lease materially alter the legal question that was before Judge Stoddard, thereby creating a new legal situation.  *See Krug v. Meros*, 468 So.2d 299, 303 (Fla. 2d DCA 1985); *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003).  Moreover, the factual question of the parties' intent in 2009 requires different evidence than what was presented in state court.  *See Winn-Dixie*, 746 F.3d 1008, 1036-37.

At oral argument, Kane contended that the 2009 HAS Lease was a continuation of the same property dispute that the parties litigated in the state court proceeding because the 2006 Master Lease between Kane and HAS covered the same property and was in place at the time of the state court case.  The current litigation is therefore

a continuation of the same lease agreement and the same legal situation that Judge Stoddard was ruling on at the time.   After a review of the Memorandum of Understanding, however, the Court disagrees.  The MOU explicitly stated that it was terminating all prior agreements between the parties, including the 2006 Master Lease, which cuts against Kane's argument that the 2009 lease was a mere continuation of the 2006 lease. Doc. 10-82 at 10-12.   Moreover, the 2006 Master Lease was significantly different from the 2009 HAS Lease, because it covered much more property than just the Howard Building—including 2307 Azeele—and afforded Ortiz and HAS greater rights than that of a mere tenant, unlike the 2009 HAS Lease. *See* Doc. 10-82 ¶ 5 (Kane's declaration affirming that the parties intended to convey different rights to HAS and Ortiz in the 2009 lease than the rights granted by the 2006 Master Lease, including "some lesser interest in the property").  The 2009 HAS Lease was a material intervening event that altered the legal situation from the time of the state court proceeding.  Nor can it be said that at the time of the state court proceeding the parties anticipated this intervening event, which only occurred because of HAS's default under the prior lease. *Cf. Collier Cnty.*, *v. Holiday CVS, LLC*, 722 F. App'x 915 (11th Cir. 2018).

The broader issue of which property the deck area belongs to was not properly before Judge Stoddard—even though the parties disputed it.  First, the transcript of the proceeding supports the interpretation that Judge Stoddard's ruling was confined to the context of the Dubliner lease.  He stated, "The only issue is whether or not [the deck area] was a separate deal or was part of the written lease.  You're now trying to

argue that it wasn't part of the deal at all.  That it actually belongs to the property next door." Doc. 10-108 at 6.  He also described himself as "interpreting the lease" when making his oral ruling, and he repeatedly referred to his finding as having answered the question of whether the written lease included the deck area. *Id.* at 9, 7, 17; 37-11 ¶ 3.  The record supports the interpretation that Judge Stoddard was not making a broader ruling outside of the context of the Dubliner lease.

But to the extent there is any ambiguity regarding the scope of the ruling, it must be held against Appellees as the parties seeking summary judgment on collateral estoppel grounds. *Meyers v. Shore Industries, Inc.*, 597 So.2d 345, 346 (Fla. 2d DCA 1992); *Krug v. Meros*, 468 So.2d 299, 302 (Fla. 2d DCA 1985); *Sun State Roofing Co., Inc. v. Cotton States Mut. Ins. Co.*, 400 So.2d 842, 844 (Fla. 2d DCA 1981).  It is not unreasonable to read Judge Stoddard's statement "I am positive that 2307 encompasses the deck area… That's my finding of fact," Doc. 10-108 at 4-5, as a conclusion about property boundaries, as the bankruptcy court did, instead of a mere interpretation of the lease. *See* Doc. 10-118 at 16 ("Judge Stoddard unequivocally ruled that the address of 2307 Azeele Street includes the deck area and would so for all time.").[16]  The scope of Judge Stoddard's ruling is ambiguous and permits multiple interpretations.   However, Appellees are the ones who shoulder the burden of

---

[16] However, the bankruptcy court's ruling in the Final Judgment that "collateral estoppel precludes relitigation of Judge Ralph Stoddard's determination that the 'back deck' is not included in the HAS lease," Doc. 10-121 at 2, is incorrect: Judge Stoddard did not, and could not, have made any determinations about the HAS Lease, which did not exist until 2009.

resolving any doubts or factual questions and conclusively proving that collateral estoppel is available.  They have not met that burden.

Finally, even if Judge Stoddard *had* made the broader ruling that the address of 2307 Azeele Street would always include the deck area, that ruling could not have preclusive effect because it was not properly before him.  As noted *supra*, the pleadings in the state court action were confined to the question of whether the written Dubliner Lease included the deck area.  *See Lucky Nation, LLC v. Al-Maghazchi*, 186 So.3d 12, 14-15 (Fla. 4th DCA 2016).

It is true that the parties litigated the broader question about property boundaries in state court, presenting evidence at the bench trial to support their arguments about which property the deck area legally belonged to.  As in *Goodman v. Aldrich & Ramsey Enterprises, Inc.*, 804 So. 2d 544, 546 (Fla. 2d DCA 2002), however, this evidence had only "tangential relevance" to the interpretation of the Dubliner Lease.  Any ruling that permanently impacted property boundaries was not critical and necessary to the interpretation of the lease and constituted, at most, dicta that cannot have preclusive effect. *See CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1318 (11th Cir. 2003).

Both Kane and the bankruptcy court believe that Judge Stoddard's ruling about property boundaries can be restricted so that it only impacts future agreements between these particular parties, or between "anyone in the future who finds out about that litigation prior to entering into a lease with Frank Kane." Doc. 10-118 at 16.  But this restriction has no basis in the law.  Rather, it reflects a finding of fact regarding the

parties' *intent* when entering into the subsequent HAS Lease—a finding that, knowing Judge Stoddard's prior ruling, "had anyone that is a party to the HAS lease…intended to include the deck area, they would have easily expressly included it within the description of the demised premises." *Id.* at 17.   This Court agrees that Judge Stoddard's ruling provides persuasive—perhaps even dispositive—evidence against HAS's argument that the parties intended to include the deck area in the 2009 HAS Lease.   But that is a factual finding about a material event that occurred after the state court proceeding, not a basis for summary judgment.   It cannot be said that the state court ruling *precludes*, as a matter of law, a factual finding about a subsequent event.

## IV.   CONCLUSION

The bankruptcy court erred in granting summary judgment to Appellees on the ground of collateral estoppel.   Although the state court proceeding raised legal and factual issues that are significantly related to the parties' dispute in the adversary proceeding, its ruling did not constitute issue preclusion because the issues to be decided in the two proceedings were not identical.   To the extent the state court made a broader ruling regarding the boundaries of the two properties, it was neither properly before the court nor critical and necessary to its determination.[17]   Collateral estoppel is not available because its elements have not been conclusively proven.   Therefore, the bankruptcy court's amended final judgment resolving adversary proceeding is

---

[17] Because of this conclusion, the Court need not address Appellants' unpreserved argument that the application of collateral estoppel would result in manifest injustice.

reversed and this action is remanded to the bankruptcy court for an evidentiary hearing on the parties' motions for summary judgment.

Accordingly, it is hereby **ORDERED**:

1. The Bankruptcy Court's Amended Final Judgment Resolving Adversary Proceeding (Doc. 10-2) is **REVERSED**.

2. The Clerk is directed to **REMAND** this action to the Bankruptcy Court for further proceedings consistent with this opinion.

3. The Clerk is further directed to close this case, docket a copy of this Order in Case No. 8:20-cv-2879-CEH, and close Case No. 8:20-cv-2879-CEH.

**DONE** and **ORDERED** in Tampa, Florida on September 22, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties